THE SECOND NATIONAL BANK OF BALTIMORE *vs.* JOHN W. WILLING & CO.

*Partnership—Insolvency—Affidavits and Interrogatories.*

Where one of the partners has absconded from the State, the remaining partner cannot, in the name of the partnership, apply for the benefit of the insolvent law of the State.

It is necessary that the petition should be filed in the name of all the partners, and it is, in effect, a surrender of all the property in which they are jointly interested, and also of all which each of them has in his separate estate.

Where an application is made for the benefit of the insolvent law in behalf of the partnership, the affidavits should be made, and the interrogatories answered by all the partners.

Where partners agree so to do, they can bring all their property, joint and separate, into the insolvent Court for distribution; but one partner cannot so deal with the separate and individual property of the other.

APPEAL from the Circuit Court for Wicomico County.

This appeal is from an order of the Circuit Court, overruling the motion to quash the proceedings in insolvency. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, and BRYAN, J.

*D'Arcy Paul* and *I. Nevett Steele,* for the appellant.

*E. Stanley Toadvine,* and *John H. Handy,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

A petition for the benefit of the insolvent laws was filed in the Circuit Court for Wicomico County, in the names of John W. Willing and James R. Willing, as partners under the style of John W. Willing & Company. It was filed on the authority of John W. Willing alone, who claimed the right to use the firm name for the purpose, under the circumstances which will be stated. The Second National Bank of Baltimore, alleging that it was a creditor of the partnership, filed a petition to quash the proceedings. We will state the question decided by the learned Court in the words in which it has been certified to us : "The sole question raised, considered and decided, was whether, where one of the partners has absconded from the State, the remaining partner can, in the name of the firm, apply for the benefit of the insolvent law of the State—or, in other words, whether such proceeding in such case is within the provision of the statute. In overruling the motion to quash, we decided that the proceeding is authorized by the statute."

By the Act of 1884, chapter 295, the provisions of the insolvent laws were for the first time extended to partnerships. Previously to that Act, joint proceedings by or against two or more persons could not be entertained. Each person was required to make application solely in his own behalf; and an adverse proceeding could not be directed against more than one individual. The Act just mentioned authorizes proceedings by or against partnerships, and assimilates them as nearly as practicable to those commenced and conducted by or against one person alone. By the express terms of the Act, as a consequence

of a petition by a partnership, all its joint stock and property, and all the separate estate of each of the partners (with the exception of the exempted property,) is vested in the trustee in insolvency. It may be assumed that the petition must be filed in the names of the partners, because a proceeding in the firm .name alone (without the individuals who compose it) is something unknown in the law. The object of the Act was to enable the persons who compose a partnership to settle in one proceeding the questions relating to all their indebtedness, both separate and joint; and thus to avoid the inconvenience and expense of several proceedings, as had been previously necessary. There is nothing in the Act to indicate that the powers of partners were to be altered or enlarged. Its whole scope and purpose relate to the means by which they may be relieved of their indebtedness. Its object was to expedite this result by enabling then to accomplish by a single petition, that which formerly required a separate petition for each partner. What one partner acting alone could rightfully do before this Act, he could do after its passage, nothing more, nothing less. Partners, when not restrained by stipulations with each other, have an equal and general power over all the joint stock and property for all purposes, within the scope of the partnership business. It is not necessary now to discuss the limitations which have sometimes been supposed to exist, respecting the power of one partner, without the co-operation of his fellows, to make a voluntary assignment of all the joint property for the payment of creditors. Our opinion on the question will be given, when it is necessary to decide it. For the purposes of this inquiry, it may be conceded that each partner has the. absolute and uncontrolled power of disposition over everything belonging to the firm. It has, however, never been held that this power extends to the separate and individual property of the other members of the partnership. What has been

contributed to the joint stock, has been placed under the joint control, and one partner has the implied authority of the others to deal with it in the joint name; but property which has not been so contributed remains in the private and separate ownership of the partner, and is as much beyond the power of alienation by a copartner, as a stranger's would be under similar circumstances. Now the petition in this case by John W. Willing, in the partnership name (if allowed) works a transfer to a trustee of all the separate property of James R. Willing, as well as of all his interest in the joint effects. It is simply and absolutely a conveyance by one man of the property of another.

Before we can attribute to the Legislature the intention to confer such an extraordinary power, we must find it clearly set forth in the statute. If the power exists, it must be found in the law, and it ought to be declared in no uncertain phrase. Let us examine its provisions. It is necessary that the petition should be filed in the name of all the partners, and it is, in effect, a surrender of all the property in which they are jointly interested, and also of all which each of them has in his separate right. Now the Act nowhere says that one of two partners can compel the other to make this surrender of property in which the latter alone is interested; nor does it say that he can make it for him without consulting him. They are, however, required to proceed in the manner directed where one person alone files a petition for his own individual benefit. A person applying alone would be obliged to exhibit under oath a schedule of his property, and a list of the debts due from and owing to him; and also to swear that he would deliver up and convey to such trustee, as might be appointed for the benefit of his creditors, all his property of every description (with the exception of the legal exemptions); and also that he had not sold or disposed of any part of his property with the intention of

delaying or defrauding any of his creditors, or of securing any benefit to himself. Moreover, he would be required to attend a meeting of the creditors, and to answer under oath any interrogatories proposed by any of the creditors touching his property, and the disposition of it, the judgments and suits against him, and any matter relating to his business. It may be asked how can one partner take in behalf of the other the oath required of him. The creditors are entitled to the purgation of the conscience of the person who alone has perfect knowledge of the subject. It would in most instances be ineffectual to ask one person about the private business and affairs of another. It would never be the case that he could swear of his own knowledge that another had not sold any part of his property with an unlawful intent. And how could he swear that another would deliver up all his property to a trustee? And how could he swear to the accuracy of a schedule of another man's property, or of a list of debts due from and owing to him? The law usually requires the best evidence which is attainable. It is a salutary and just rule. There is nothing in the statute to show that the creditors should not have the right of receiving information about their debtors' concerns from the person best able to give it; that is, from the debtor himself. These reasons lead us to think that the affidavits should be made, and the interrogatories answered by all the partners, where an application is made for the benefit of the insolvent law on behalf of the partnership. Every feature of the statute shows that the petition by the debtor if filed in the exercise of a privilege conferred upon him. It is essentially voluntary. He may accept or decline it at his pleasure. The right extended to a partnership is the same as that which belongs to an individual. If the partners agree to do so, they may bring all their property, joint and separate, into the insolvent Court for distribution; but we do not find any warrant in the law for the doctrine

that one of them can deal in this way with the property of the other. We must reverse the order of the Circuit Court and quash the proceedings in insolvency.

> *Order reversed with costs,*
> *and proceedings quashed.*

(Decided 4th January, 1887.)